UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER O&G, LLC, | § | |
| | § | |
| *Plaintiff/Counter-Defendant*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2965 |
| | § | |
| NOMAD LAND AND ENERGY RESOURCES, LLC, | § | |
| | § | |
| *Defendant/Counter-Plaintiff*. | § | |

**MEMORANDUM ORDER AND OPINION**

Pending before the court is counter-defendants Jones Gill L.L.P. and Michael D. Jones's (the "Counter-Defendants") motion to dismiss counter-plaintiff Nomad Land and Energy Resources's ("Nomad") third-party claims against the Counter-Defendants. Dkt. 20. Having considered the motion, response, reply, evidentiary record, and the applicable law, the court is of the opinion that the Counter-Defendants' motion to dismiss should be DENIED.

**I. BACKGROUND**

On June 27, 2016, Nomad entered into a Purchase and Sale Agreement ("PSA") with Alexander O&G, LLC ("AOG") for the sale of oil and gas interests in Pecos County, Texas. Dkt. 15 at 5. The transaction to purchase the interests was expected to close on August 12, 2016. *Id*. The PSA provided that AOG would deposit earnest money into an escrow account:

> Upon execution and delivery of the Agreement, [AOG] shall tender [Nomad], in an agreed escrow agent's account, an earnest money deposit of $100,000.00 to help ensure [AOG's] performance hereunder, which deposit shall be non-refundable, except in the event that [Nomad] shall be unwilling or unable to perform his obligations hereunder, in which case the entirety of the earnest money deposit, and any interest or any additions thereto, shall be refunded to [AOG]. Dkt. 9-1 at 2.

On or about June 28, 2016, Nomad submitted all relevant title information in its possession to AOG. *Id.* at 6. On June 30, 2016, AOG informed Nomad that it was going to cease performing due diligence unless Nomad provided further assurances that Nomad would have title to all of the transferred minerals. *Id.* Nomad assured AOG that it would possess all the necessary signatures to acquire and transfer the interests to AOG by the closing date. *Id.*

On July 22, 2016, AOG notified Nomad that it was terminating the PSA. *Id.* On July 27, 2016, Nomad requested that the Counter-Defendants, AOG's counsel in this lawsuit, release the $100,000.00 deposit they held in escrow pursuant to the terms of the PSA. *Id*. In support of this request, Nomad attached an unsigned Escrow Agreement naming the Counter-Defendants as escrow agent. *Id.*; *see* Dkt. 15-2 at 3 (Jones Gill LLP listed as "ESCROW AGENT" and Michael D. Jones listed as signatory for Jones Gill LLP). In response to this request, Michael D. Jones, a partner at Jones Gill L.L.P. ("Jones Gill"), sent an e-mail to John Bay, Nomad's managing partner, stating:

> You have sent me an unexecuted escrow agreement. Neither you nor [AOG] has executed this agreement. Jones Gill returned the funds deposited in our IOLTA to [AOG] at its request. [AOG] paid the funds into our IOLTA and is the owner of those funds. Dkt. 15 at 6.

According to the PSA, there are two conditions in which the $100,000.00 earnest money would be returned to AOG: (1) if Nomad was unable to perform the PSA, or (2) if Nomad was unwilling to perform under the terms of the PSA. *Id.* at 7. According to the complaint, Nomad was willing and able to perform its obligations under the PSA at all times up until the closing date. *Id.* Nomad argues that the reason AOG terminated the PSA was because it had lost its source of financing to purchase the minerals. *Id*.

On August 23, 2016, AOG initiated a lawsuit against Nomad in the 281st Judicial District Court of Harris County, Texas, for breach of contract and declaratory judgment. Dkt. 1 at 1. Nomad removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and 1441(a). *Id.* On April 12, 2017, Nomad filed an amended answer and raised counterclaims against AOG, Jones Gill, and Michael D. Jones for breach of contract, breach of fiduciary duty, money had and received, and promissory estoppel. Dkt. 15. On May 12, 2017, the Counter-Defendants moved to dismiss the counterclaims. Dkt. 20. On June 2, 2017, Nomad filed a response to the motion to dismiss. Dkt. 24. On June 7, 2017, the Counter-Defendants filed a reply. Dkt. 29.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In turn, a party against whom claims are asserted may move to dismiss those claims when the pleader has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To meet this standard, a pleading must offer "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding "naked assertions devoid of further factual enhancement" are not entitled to the presumption of truth).

"[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss for failure to state a claim, courts generally are limited to the complaint and any attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint, including those made on appeal.").

### III. ANALYSIS

The Counter-Defendants move to dismiss Nomad's counterclaims for breach of contract, breach of fiduciary duty, money had and received, and promissory estoppel. Dkt. 20. Claims are subject to dismissal if the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court will address each cause of action in turn.

**A. Breach of Fiduciary Duty**

In Texas, the elements of breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his or her fiduciary duty to the plaintiff; and (3) the defendant's breach must result in either injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). In Texas, an escrow agent owes the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve the money and pay it only to those entitled to receive it. *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969). At the threshold, the court must determine whether a fiduciary relationship exists between the Counter-Defendants and Nomad.

4

Nomad argues that a fiduciary relationship exists because Jones Gill accepted the $100,000.00 deposit into its IOLTA account and received specific instructions from the PSA on how to administer the funds. Dkt. 15 at 9–10; Dkt. 24 at 8 (citing *Pippen,* 439 S.W.2d at 662 and *Newington Ltd. v. Forrester*, No. 3:08-CV-0864-G ECF, 2008 WL 4908200, at *3 (N.D. Tex. Nov. 13, 2008)). The Counter-Defendants argue that, in the absence of a valid, executed contract, they were not the escrow agent for Nomad and AOG, and, alternatively, none of their conduct signaled consent to act as an escrow agent. Dkt. 20 at 3–5.

To create an escrow and the accompanying fiduciary relationship, the parties to the underlying transaction need only to deposit instruments or funds with a third party and to agree to the terms in which the third party would deliver the items deposited. *See Smith v. Daniel*, 288 S.W. 528, 531 (Tex. Civ. App.— Beaumont 1926, no writ). There must be a valid underlying contract to support the escrow agreement. *La Roe v. Davis*, 333 S.W.2d 222, 224 (Tex. Civ. App.—Amarillo 1960, no writ). However, in the absence of a contract, a fiduciary relationship may still exist. *Pippen*, 439 S.W.2d at 662. The Texas Supreme Court has imposed the duties of an escrow agent on whoever holds the funds when a situation closely parallels an escrow arrangement. *Forrester*, 2008 WL 4908200 at *3 (citing *Pippen*, 439 S.W.2d at 662). Even where no formal escrow agreement exists, a party that receives money accompanied by specific instructions on how to apply the money has the duties of an escrow agent. *Id.*

The court finds that Nomad has sufficiently pled the existence of a fiduciary relationship. Nomad alleged that the PSA between AOG and Nomad is a valid, underlying contract in which the parties agreed to clear and definite escrow terms. Dkt. 15 at 5 (counterclaim); *see La Roe*, 333 S.W.2d at 224. Nomad's pleading quoted the specific language from the PSA giving instructions

5

to the "agreed escrow agent" to not return the earnest money to AOG unless Nomad was unwilling or unable to perform its obligations under the contract. Dkt. 15 at 5. Nomad also alleged that the Counter-Defendants were counsel to AOG for the PSA, and therefore should have been on notice of the instructions to the escrow agent. *Id.* Lastly, Nomad pled that the Counter-Defendants deposited $100,000.00 of AOG's escrow funds into Jones Gill's IOLTA account, as required by the PSA. *Id*. The court finds that these facts create a more than plausible basis that the Counter-Defendants were on notice of the explicit instructions to the escrow agent in the PSA and assumed a fiduciary duty to Nomad when they accepted the $100,000.00 earnest money deposited into Jones Gill's IOLTA account. *See Forrester*, 2008 WL 4908200 at *3. Nomad alleged sufficient facts showing that a fiduciary relationship existed between the Counter-Defendants and Nomad.

The court also finds that Nomad alleged facts establishing the other two elements of breach of fiduciary duty. Nomad alleged that the Counter-Defendants breached their fiduciary duty because the earnest money was returned to the wrong party. Dkt. 15 at 5; *Pippen*, 439 S.W.2d at 665; *see generally Navigant*, 508 F.3d at 283 (explaining the elements of breach of fiduciary duty). Additionally, Nomad alleged that the Counter-Defendants' breach of fiduciary duty resulted in injury because Nomad was allegedly entitled to the $100,000.00 in the escrow account. Dkt. 15 at 5; *Pippen*, 439 S.W.2d at 665.

Nomad's well-pleaded complaint allows the court to draw a reasonable inference that the Counter-Defendants are liable for breach of fiduciary duty. *Iqbal*, 556 U.S. at 678. Thus, the Counter-Defendants' motion to dismiss the breach of fiduciary duty claim is DENIED.

**B.    Breach of Contract**

In Texas, the essential elements of a breach of contract are (1) the existence of a valid

contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). A contract may be implied-in-fact if the facts and circumstances indicate that there is a mutual intent between the parties to contract. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 569 (Tex. App.—Dallas 1989, no writ). The elements of an enforceable contract are the same for both express and implied contracts. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Additionally, delivery of the contract is not required if the contract does not require it or if the parties show a contrary intent by their conduct. *Awad Tex. Enters. Inc. v. Homart Dev. Co.*, 589 S.W.2d 817, 819–20 (Tex. App.—Dallas 1979, no writ).

The Counter-Defendants argue that Nomad's counterclaim was conclusory and did not provide fair notice of a breach of contract claim. Dkt. 20 at 4–5. Specifically, the Counter-Defendants state that Nomad failed to identify a date, time, and place when the escrow agreement occurred, and generally failed to provide a factual basis for the escrow agreement. *Id*.

While Nomad's counterclaim does not lay out the elements of breach of contract or cite to any case law or statutory authority in support of the Counter-Defendants' breach of contract, the pleading nonetheless satisfies the 12(b)(6) standard because Nomad has pled enough facts to plausibly state a claim for relief. *Iqbal*, 556 U.S. at 678. According to Nomad, the PSA contained a specific provision for AOG to deposit $100,000.00 in earnest money with an escrow agent. Dkt. 15 at 5. The earnest money would go to Nomad after the closing date (August 12, 2016) unless Nomad was unwilling or unable to close the deal. *Id.* Nomad also included an Escrow Agreement

7

that, though unexecuted, clearly listed Jones Gill as "ESCROW AGENT" and Michael D. Jones as the firm's designated signatory in this transaction. *Id.* Ex. B at 2. Michael D. Jones acknowledged in an e-mail to Nomad that AOG deposited $100,000.00 into the IOLTA account of AOG's counsel, Jones Gill. Dkt. 15 at 6. These facts create a plausible basis that a valid contract existed whereby the Counter-Defendants agreed to serve as an escrow agent for AOG and Nomad. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("[An implied contract] arises from the acts and conduct of the parties").

Nomad also alleged facts sufficient to prove that it plausibly tendered performance because when a defendant openly refuses to perform his or her part of a contract, a plaintiff need not tender performance prior to filing suit. *Burford v. Pounders*, 199 S.W.2d 141, 144 (Tex. 1947). Where tender of performance is excused, a party must plead and prove that he or she was ready, willing, and able to perform. *Chessher v. McNabb*, 619 S.W.2d 420, 421 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex. Civ. App.—Amarillo 1972, no writ). Nomad pled that the Counter-Defendants refused to deliver the earnest money, an open refusal to perform their part of the contract. Dkt. 15 at 6; *Burford*, 199 S.W.2d at 144. Nomad also pled that "[a]t all times up to the closing date . . . Nomad was ready, willing and able to perform its obligations pursuant to the terms of the PSA." Dkt. 15 at 7.

These alleged facts excuse tender of performance. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594–95 (Tex. 2008) ("[P]laintiff must plead and prove readiness, willingness, and ability to timely perform"); *Corzelius v. Oliver*, 220 S.W.2d 632, 635 (Tex. 1949) (excusing tender where plaintiff was ready, willing, and able to perform).

8

Lastly, the pleading includes facts showing that the Counter-Defendants breached the contract and caused Nomad damages. Nomad pled that it was willing and able to close the transaction, and thus by extension Nomad was not "unwilling or unable to perform," which were the two exceptions excusing the Counter-Defendants from delivering the earnest money to Nomad. Dkt. 15 at 5 (quoting the PSA). Yet, the Counter-Defendants refused to deliver the earnest money, in violation of the PSA. *Id.* at 6. These well-pleaded facts plausibly establish the breach element of a breach of contract claim, and the $100,000.00 injury alleged by Nomad satisfies the damages element. *Id.*

Because Nomad has sufficiently pled facts that establish breach of contract, the Counter-Defendants' motion to dismiss the breach of contract claim is DENIED.

## C. Money Had and Received

A claim for money had and received seeks equitable relief. *Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quotations omitted); *Stonebridge Life Ins., Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007) (per curiam). A plaintiff must show that a defendant holds money that in "equity and good conscience" belongs to the plaintiff. *Vackar v. Sentry Supply Inc.*, No. H-12-3716, 2014 WL 28853, at *7 (S.D. Tex. Jan. 2, 2014) (Rosenthal, J.) (citing *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)).

Texas courts allow restitution for money had and received claims in cases where a party paid or credited money to the wrong person or account. *See Amoco*, 946 S.W.2d at 163–65 (payment to wrong person); *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 710–11 (Tex. App.—Corpus Christi 2006, pet. denied) (payment applied to wrong account); *Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, P.L.L.C.*, 143 S.W.3d 518, 520 (Tex. App.—Dallas 2004, pet. denied) (earnest money released to wrong client). A plaintiff can recover for money had

9

and received even when the defendant no longer holds the money. *First Am. Title Ins. Co. v. Brett C. Moody Investments, LLC*, No. CIV.A. H-14-0473, 2015 WL 1220733, at *8 (S.D. Tex. Mar. 17, 2015) (Rosenthal, J.); *see also Pickett v. Republic Nat'l Bank of Dall.*, 619 S.W.2d 399, 400 (Tex. 1981) ("A showing that the [defendant] no longer has the specific funds is not sufficient to raise a fact issue of prejudicial change of position.").

Nomad's money had and received claim clearly satisfies the Rule 12(b)(6) standard. *Iqbal*, 556 U.S. at 678. Nomad alleged that the Counter-Defendants gave money that rightfully belonged to Nomad to the wrong party. Dkt. 15 at 8–9; *see Amoco*, 946 S.W.2d at 163–65. Texas law is clear that Nomad may still bring the claim even though the defendant no longer holds the money. *See First Am. Title Ins. Co.*, 2015 WL 1220733 at *8; *Pickett*, 619 S.W.2d at 400. Therefore, Nomad pled enough facts for the claim to be plausible on its face. *Iqbal*, 556 U.S. at 678. Accordingly, the Counter-Defendants' motion to dismiss the money had and received claim is DENIED.

**D.     Promissory Estoppel – Partial Performance**

Although the counterclaim referred to a claim of promissory estoppel, the parties instead debated the factual merits of the partial performance equitable exception to the statute of frauds in their response and reply. *Compare* Dkt. 15 at 10–11 with Dkts. 20 at 8, 24 at 9–11. Thus, the court will determine whether Nomad has satisfied the 12(b)(6) standard for the partial performance exception to the statute of frauds.

Under the partial performance doctrine, an agreement that does not meet the requirements of the statute of frauds, but that has been partially performed, may be enforced by the court "if denial of enforcement would amount to a virtual fraud." *Exxon Corp. V. Breezvale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied); *see also Owens v. Specialized Loan Servicing, L.L.C.*,

No. 16-20557, 2017 WL 2438251, at *4 (5th Cir. June 5, 2017) (applying the *Breezevale* standard but finding no partial performance). To constitute partial performance, the actions must unequivocally refer to the alleged agreement, such that the actions could have been done with no other design than to fulfill the alleged agreement. *Breezevale*, 82 S.W.3d at 439–40 (holding that a plaintiff's visit to Nigeria was not unequivocally referable to a particular contract with the defendant, because the parties had another similar contract in Nigeria that could have explained the visit).

Nomad argues that AOG's deposit and the Counter-Defendants' acceptance of the $100,000.00 into the IOLTA account were made in the context of the escrow agreement, and were intended to fulfill the escrow arrangement in the PSA. Dkt. 15 at 10–11; Dkt. 24 at 10. In response, the Counter-Defendants argue that these actions lack the necessary precision to prove the existence of a parol agreement. Dkt. 20 at 8.

The court finds that Nomad's allegations satisfies the 12(b)(6) pleading standard. Nomad alleged that AOG and the Counter-Defendants partially performed the PSA by depositing and receiving the $100,000.00 in escrow funds. Dkt. 15 at 10–11. A factfinder could plausibly see that these actions "unequivocally" refer to the alleged escrow agreement, and had "no other design than to fulfill the particular agreement sought to be enforced." Dkt. 24 at 10; *see Breezevale*, 82 S.W.3d at 439–40. Therefore, the Counter-Defendants' motion to dismiss the partial performance claim is DENIED.

## IV. Conclusion

The Counter-Defendants's motion to dismiss Nomad's third-party claims against Jones Gill L.L.P. and Michael D. Jones (Dkt. 20) is DENIED.

Signed at Houston, Texas on August 16, 2017.

                                        Gray. H. Miller
                                 United States District Judge