# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER O&G, L.L.C., *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2965 |
| | § | |
| NOMAD LAND AND ENERGY RESOURCES, L.L.C., | § § § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for summary judgment filed by counter-defendants Michael D. Jones ("Jones") and Jones Gill LLP (collectively, "Jones Gill"). Dkt. 32. Counter-plaintiff Nomad Land and Energy Resources L.L.C. ("Nomad") responded. Dkt. 52. Jones Gill replied. Dkt. 54. Nomad supplemented its response. Dkt. 58. Jones Gill supplemented its reply. Dkt. 61. Having considered the motion, response, reply, supplemental briefing, record evidence, and applicable law, the court is of the opinion that Jones Gill's motion should be GRANTED.

## I. BACKGROUND

This dispute arises out of an oil and gas transaction. Counter-defendant and plaintiff Alexander O&G, L.L.C. ("Alexander") and Nomad are oil and gas companies. Dkt. 32 at 1–3. Jones Gill is a law firm. *Id.* Jones is an attorney at that firm. *Id.*

On June 27, 2016, Alexander's president, Michael Mann ("Mann"), and Nomad's managing partner, John T. Bay ("Bay"), signed a Purchase and Sale Agreement ("PSA") for a transaction

involving mineral rights.[1] Dkt. 15-1; Dkt. 32-1 at 3 (Jones Aff.). Jones Gill did not draft, review, or sign the PSA. Dkt. 15-1; Dkt. 32-1 at 1–3.

The PSA defines Nomad as the "Seller" and Alexander as the "Buyer." *Id.* The PSA states:

> Upon the execution and delivery of the Agreement, Buyer shall tender Seller, in an agreed escrow agent's account, an earnest money deposit of $100,000.00 to help assure Buyer's performance hereunder, which deposit shall be non-refundable, except in the event that Seller shall be unwilling or unable to perform his obligations hereunder, in which case, the entirety of the earnest money deposit, and any interest or any other additions thereto, shall be refunded to Buyer. If the agreement closes, as contemplated, the earnest money, and any other additions thereto, shall be applied toward the satisfaction of the payment of the total consideration due and payable hereunder.

Dkt. 15-1 (underlined in original). The PSA does not mention or identify Jones or Jones Gill. *Id.*

Nomad and Alexander used a third-party broker, Steve Fulton ("Fulton"). Dkt. 61 at 3. Fulton asked Bay about appointing an escrow agent. *Id.* Bay testified that he "agreed" and "said 'anybody.'" *Id.* Before asking Jones Gill, Alexander suggested the parties could use the firm as the escrow agent. Dkt. 58 at 3; Dkt. 61. at 4.

In June 2016, Mann contacted Jones Gill about two transactions: one with Noroma Energy, L.L.C. ("Noroma") as well as the one with Nomad. Dkt. 32-1 at 1. For the first, Jones Gill gave Alexander instructions on wiring money to Jones Gill's IOLTA account.[2] *Id.* at 2. But the parties to the Noroma-Alexander transaction agreed to use a different escrow agent. *Id.*

---

[1]Because the parties refer to "John T. Bay" and "Tom Bay" interchangeably, the court assumes that both references identify the same individual. *See, e.g.,* Dkt. 52-1 at 4–5; Dkt. 61 at 2–5.

[2]"Interest on Lawyers Trust Accounts (IOLTA) is a . . . way to increase access to justice for individuals and families living in poverty . . .[whereby] interest from lawyer trust accounts is pooled to provide civil legal aid to the poor and support improvements to the justice system." What is IOLTA?, IOLTA, http://www.iolta.org/what-is-iolta.

For the second transaction, Mann asked Jones Gill to "hold the earnest money for the Nomad PSA *in the event* the parties agreed to the terms of the proposed sale." *Id.* (emphasis added); Dkt. 61 at 3. Jones Gill "agreed to hold the earnest money *only if* all parties executed and returned an escrow agreement." Dkt. 32-1 at 2 (emphasis added).

Jones Gill attorney Brian Wittpenn inserted the names of the potential parties into a proposed escrow agreement ("proposed agreement"). Dkt. 15-2 at 2; Dkt. 32-1 at 2. Specifically, the proposed agreement was to govern Nomad as the "Seller," Alexander as the "Buyer," and Jones Gill as the "Escrow Agent." *Id.*

Wittpenn forwarded the proposed agreement to Alexander via email. Dkt. 32-1 at 2. Fulton sent it to Bay. Dkt. 61 at 3. But Bay did not sign it. *Id.* Dkt. 61 at 4. No one from Alexander or Jones Gill signed it, either. Dkt. 15-2 at 4; Dkt. 61 at 3.

On June 29, 2016, Alexander wired $100,000.00 to Jones Gill's IOLTA account. Dkt. 58 at 2–3. Alexander used the wiring instructions from the Noroma-Alexander transaction. *Id.* Jones Gill did not receive a signed copy of the proposed agreement from Alexander or Nomad. Dkt. 32-1 at 2–3.

On July 7, 2016, Mann told Jones Gill that the parties did not execute the proposed agreement. *Id.* Then, Jones asked the firm's accountant and bookkeeper, Patty Blake, to wire the money back to Alexander. *Id.* at 1, 3. Blake completed the transfer on July 8, 2016. Dkt. 32-2 at 1.

On July 27, 2016, Bay emailed Jones. Dkt. 15-3 at 3. That email was the first contact that anyone from Jones Gill had with Bay. Dkt. 32-1 at 1. Bay's message included an unsigned copy of the proposed agreement that Fulton had sent him. Dkt. 15-3 at 2. Bay asked Jones to release the escrow balance to him. *Id.* at 2–3 Jones replied:

3

> Dear Mr. Bay: You have sent me an unexecuted escrow agreement. Neither you nor Alexander Oil and Gas executed this agreement. Jones Gill LLP returned the funds deposited in our IOLTA to Alexander Oil and Gas at its request. Alexander Oil & Gas paid the funds into our IOLTA and it is the owner of those funds.

*Id.* at 2.

On August 23, 2016, Alexander sued Nomad to get a state court judgment declaring that the PSA had been terminated. Dkt. 1-4. Nomad removed to this court. Dkt. 1. On April 12, 2017, Nomad amended its answer to include third-party claims against Jones Gill for breach of contract, money had and received, breach of fiduciary duty, and, alternatively, promissory estoppel or partial performance. Dkt. 15. Jones Gill moves for summary judgment on all of Nomad's claims. Dkt. 32.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Both parties object to each other's summary judgment evidence. Dkts. 52, 54. Jones Gill argues that, on the undisputed facts, it is entitled to summary judgment on each of Nomad's claims.

4

Dkt. 32 at 2. The court will address the evidentiary objections before analyzing the parties' arguments.

### A. Objections

1. Jones' affidavit

Jones Gill offers Jones' affidavit to support its motion. Dkt. 32-1. That affidavit addresses the events surrounding the transaction giving rise to the instant lawsuit. *Id.* Nomad objects to paragraphs 4–7 of Jones' affidavit. Dkt. 52 at 6–7. Nomad argues that each of those paragraphs are inadmissible because they are: (1) not based on Jones' personal knowledge; (2) contain hearsay; (3) do not contain the proper foundation; and (4) are not the best evidence. *Id.* at 6. However, those paragraphs are based "fully and completely on . . . Jones' personal knowledge of the facts in this case." Dkt. 54 at 1. Jones can also serve as a competent witness as to the Noroma-Alexander transaction because he served as counsel of record in a lawsuit arising from that transaction. *Id.*; *see also* Dkt. 32-1 at 1. Because Jones' affidavit satisfies Rule 56(c)(4), the objections to that affidavit are OVERRULED. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.").

2. Termination e-mail

Jones Gill offers Jones' email response to Bay's inquiry about the escrow balance. Dkt. 15-3. Nomad refers to this email as "the termination e-mail." Dkt. 52 at 9. Nomad objects to it on the grounds that it "was misaddressed, never received by Nomad[,] and was never produced during discovery." *Id.* Nomad fails to present an evidentiary objection. Additionally, when Jones Gill filed the instant motion, discovery had not yet closed. Dkt. 57. Accordingly, the court OVERRULES this objection.

3. Bay's affidavit

Nomad offers Bay's affidavit. Dkt. 52-1 at 5–11. The affidavit addresses the events giving rise to the instant lawsuit. *Id.* Jones Gill objects to paragraph 2 on the grounds that Bay gives legal conclusions when he is neither qualified nor designated to serve as a legal expert. Dkt. 54-1 at 1 (citing Dkt. 52-1 at 5–6). The court agrees. *See* Fed. R. Evid. 701, 702; Dkt. 52-1 at 5–6. Accordingly, the court SUSTAINS that objection.

Jones Gill objects to paragraphs 5, 7, and 8 as irrelevant. Dkt. 54 at 2. Paragraph 5 addresses the escrow clause which is relevant in this case. Dkt. 52-1 at 7. However, Paragraphs 7 and 8 are not relevant as they address general details of the PSA. *Id.* at 7–9. None of those details relate to the claims analyzed in this order. Accordingly, the court OVERRULES the objection to Paragraph 5 but SUSTAINS it as to Paragraphs 7 and 8.

Jones Gill also objects to paragraphs 6 and 7 as hearsay and as not based on personal knowledge. Dkt. 54 at 2. The court OVERRULES that objection as to Paragraph 6 but SUSTAINS it as to Paragraph 7.

For these reasons, the court will not consider Paragraphs 2, 7, and 8. However, the court will consider Paragraphs 5 and 6.

4. Ferrar's affidavit

Nomad offers the affidavit of its retained expert, William D. Ferrar. Dkt. 52-4 at 5–8. Ferrar provides his expert opinion on the PSA. *Id.* Nomad cites the affidavit to show that "what [Alexander] was really worried about was not being able to market and otherwise fund the deal." Dkt. 52 at 8–9. Jones Gill objects to Ferrar's affidavit as irrelevant to the instant motion. Dkt. 54

at 2. The court agrees and SUSTAINS the objection. *Compare* Fed. R. Evid. 401, *with* Dkt. 52-4 at 5–8.

5. Arguments by reference

Jones Gill objects to "Nomad's improper attempt to include, by reference, the arguments made by Nomad in its Response to the Motion to Dismiss." Dkt. 54 at 2. The court will consider materials when, and to the extent that, the parties cite to the record. *See* Fed. R. Civ. P. 56(c)(1)(A) ("[a] party asserting that a fact . . . is genuinely disputed must support that assertion by citing to particular parts of materials in the record"); *see also* Fed. R. Civ. P. 56(c)(3) ("[t]he court need consider only the cited materials, but it may consider other materials in the record"). Accordingly, the court OVERRULES this objection.

**B. Breach of contract**

"A party's concession of an issue means the issue is waived and may not be revived." *Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003) (party waived arguments at summary judgment stage when its brief expressly conceded bases of recovery for some of its claims). Jones Gill argues that Nomad waived its claim for breach of contract.[3] Dkt. 61 at 2 (citing Dkt. 51). The court agrees. *Compare* Dkt. 52 at 14 ("Nomad hereby waives its claim against the Jones Gill Parties for breach of contract."), *with Smith*, 328 F.3d at 770. Accordingly, that claim is DISMISSED with PREJUDICE.

---

[3] Jones Gill also argues that Nomad's breach of contract claim fails because no valid contract exists. Dkt. 32 at 5–6. Specifically, Jones Gill argues that Nomad fails to show evidence of acceptance, mutual assent, or consideration. *See id.* However, because Nomad waived its contract claim, the court will not address those arguments.

### C. Money had and received

"Money had and received is an equitable claim that seeks to prevent unjust enrichment when one person obtains money that in equity and good conscience belongs to another."[4] *Merry Homes, Inc. v. Luc Dao*, No. 14-16-00724-cv, 2017 WL 4159206, *2 (Tex. App.—Houston [14th Dist.] Sep. 19, 2017, no pet.) (mem. op.) (citing *Staats v. Miller*, 150 Tex. 581, 584 (Tex. 1951)). The claim "aims at the abstract justice of the case and looks solely to the inquiry whether the defendant holds money which belongs to the plaintiff." *Staats*, 150 Tex. at 585 (sellers stated claim by alleging that a reseller kept the money which he had promised to give them after selling their machine and deducting his expenses).

Jones Gill argues that Nomad's money had and received claim fails because the money at issue belonged to Alexander, not Nomad. Dkt. 32 at 7. Jones Gill cites the Jones affidavit. *Id.* (citing Dkt. 32-1 at 2). Jones stated that "[Alexander] was already in possession of the Jones Gill LLP IOLTA wiring instructions . . . and wire transferred $100,0000.00 to the Jones Gill LLP IOLTA." Dkt. 32-1 at 2.

Jones Gill also argues that Nomad's claim fails because neither Jones Gill nor Jones holds the funds. Dkt 32 at 7. Jones Gill cites to Bay's deposition: "Q: Okay. So we don't have the money anymore, right? A: Yes, I would agree." Dkt. 61 at 2. Jones Gill has met its burden to show the absence of a material fact on Nomad's money had and received claim.

---

[4]In Texas, "[u]njust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received. Unjust enrichment allows recovery when one person has obtained a benefit by fraud, duress, or the taking of an undue advantage." *Perales v. Bank of America, N.A.*, Civil Action No. H-14-1791, 2014 WL 3907793,*3 (S.D. Tex. Aug. 11, 2014) (Rosenthal, J.) (quotations omitted). "The simplest case of unjust enrichment liability is the mistaken payment. The plaintiff, thinking she owes the defendant $10, pays that amount, but in fact she does not owe anything, but the transfer takes effect as such, so that the defendant becomes the owner of the money." *Id.*

Nomad responds that a fact issue exists on Jones Gill's liability for money had and received because they "had no right to deliver the escrow funds back to [Alexander]." Dkt. 52 at 14. Nomad supports that argument by asserting that the "PSA states that the earnest money funds placed in escrow with the Jones Gill Parties was [sic] to be tendered <u>to Nomad.</u>" *Id.* (underlined in original). The PSA does not include that statement. *Compare* Dkt. 15-1, *with* Dkt. 52 at 14. Nor does it ever mention Jones Gill or Jones. *See id.* Without more, Nomad fails to raise a fact issue on ownership of the funds.

Nomad also responds by citing a single case to assert that "[t]here is no requirement that defendant still have the money for a defendant to be liable for money had and received." Dkt. 52 at 14 (citing *Pickett v. Republic Nat. Bank of Dallas*, 619 S.W.2d 399, 400 (Tex. 1981) (per curiam)). *Pickett* does not stand for that proposition. *See* 619, S.W.2d at 400. The *Pickett* court affirmed summary judgment on a bank's restitution claim when that bank mistakenly paid funds to an estate and that estate disbursed the funds to two trusts. *See id.* Although the court determined that evidence showed that the "[e]state no longer has the specific funds," *Pickett* held that evidence alone was not enough to raise a fact issue on whether the estate and trusts experienced a "prejudicial change of position." *Id.* (emphasis added). In short, Nomad cited *Pickett* for only one-half of the proposition stated. Doing so did not advance Nomad's effort to raise a fact issue.

Jones Gill has met its burden to show that no triable issue of fact exists on Nomad's money had and received claim. It is undisputed that: (1) Alexander wired its own money to the Jones Gill IOLTA account; (2) Jones Gill returned that money to Alexander; and (3) Jones Gill no longer holds it. Nomad did not proffer any evidence raising an issue of fact. As a result, Nomad cannot defeat summary judgment and Jones Gill is entitled to judgment as a matter of law. Accordingly, the court

GRANTS the instant motion with respect to Nomad's money had and received claim. Thus, the court DISMISSES that claim WITH PREJUDICE.

### D. Breach of fiduciary duty

"The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant." *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.). "When the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

In this case, Jones Gill's purported fiduciary duty arises out of an escrow contract. Dkt. 52 at 10. "An escrow agent owes a fiduciary duty to both parties of the escrow contract." *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex. App.—Dallas 1992, writ denied). "In Texas, an escrow agent is appointed through a specific written instrument which imparts a legal obligation." *Chapman Children's Trust v. Porter Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). "[A]n escrow is created only when the parties come to a clear and definite agreement directing that the funds be deposited with a third party and specifying the terms and conditions on which the third party is required to deliver the funds." *Affiliated Comput. Sys., Inc. v. Sherman (In re Kemp)*, 52 F.3d 546, 551 (5th Cir. 1995) (applying Texas law). "[T]he law is clear that a mere deposit of earnest money into a bank account is not sufficient to create an escrow contract or create escrow liabilities." *Bank One Texas, N.A. v. Taylor*, 970 F.2d 16, 14 (5th Cir. 1992) (applying Texas law).

Jones Gill argues that Nomad cannot show the existence of a fiduciary relationship without a written agreement appointing either Jones Gill or Jones as an escrow agent. Dkt. 32 at 8–9. It is

10

undisputed that: (1) no escrow agreement was ever executed; and that (2) Alexander unilaterally deposited funds into Jones Gill's IOLTA account by using wiring instructions from the Noroma-Alexander transaction. Dkt. 52 at 10; Dkt. 58 at 2–3. Jones Gill met its burden to show the absence of a triable fact issue.

Nomad argues that a fact issue exists because Jones Gill and Jones "assumed the role of an escrow agent." Dkt. 52 at 10–11. Nomad asserts that "Jones Gill and . . . Jones agreed to act as escrow agents . . . when they accepted monies from their client, [Alexander], into the Jones Gill IOLTA account, per the terms of the PSA." *Id.* Nomad provides no accompanying record citations. *Compare id.*, *and* Dkt. 58 at 2–3, *with* Fed. R. Civ. P. 56(c)(1)(A).

Instead, Nomad asserts that the "there is no requirement that [Jones Gill or Jones] be parties to an underlying agreement to be charged with the duties of an escrow agent." Dkt. 52 at 10. Second, Nomad asserts that Texas law does not require the parties to the PSA to execute a separate, written escrow agreement appointing Jones Gill or Jones as escrow agents. *Id.*

In support, Nomad cites *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969) and four cases that follow that decision. *Id.* In *Pippen*, a city sued its land agent and title company to recover funds that the land agent converted for his own use. *See* 439 S.W.2d at 664–65. In that case, the city and the title company did not execute a formal escrow agreement. *Id.* However, the court imposed the duties of an escrow agent on the latter after: (1) the city sent its funds to the title company with specific instructions on how to distribute those funds; (2) the title company ignored those instructions; and (3) the title company used the funds for a different purpose at the city's expense. *See id.*; *see also Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 499, 502 (Tex. App.—Dallas 2014, no pet.).

11

No one disputes that no formal escrow agreement exists. That fact represents the sole similarity between *Pippen* and this case. *See* Dkt. 52 at 11. Accordingly, it is factually distinguishable. In addition, *Pippen* was not a breach of fiduciary duty case. *Flagstar*, 451 S.W.3d at 499, 502 (citing *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 906 (Tex. 1982)). Instead, it "was decided on an agency theory." *Id.* at 502 (citing *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 906 (Tex. 1982)). Thus, *Pippen*'s reasoning is similarly inapplicable. Without more, Nomad's reliance on *Pippen* and its progeny is misplaced.

The undisputed facts—that no escrow agreement was ever executed and that Alexander wired funds to Jones Gill's IOLTA account—do not transform Jones Gill into an escrow agent. *See Chapman*, 32 S.W.3d at 438; *Sherman*, 52 F.3d at 551; *Taylor*, 970 F.2d at 16; *see also* Dkt. 52 at 10; Dkt. 58 at 2–3. Thus, Nomad has failed to raise a fact issue on whether Jones Gill owed it a fiduciary duty.

Further, Nomad failed to provide any evidence to raise a fact issue on whether Jones Gill breached its purported duty. *See* Dkt. 52 at 10–13; Dkt. 58. Similarly, Nomad also failed to provide any evidence on how that purported breach injured Nomad or benefitted Jones Gill. *See id.* Accordingly, Nomad has failed to raise a genuine issue of fact on all of the elements of its breach of fiduciary duty claim. For these reasons, the court GRANTS the instant motion as to the breach of fiduciary duty claim and DISMISSES that claim with PREJUDICE.

### E. Promissory estoppel or partial performance[5]

Promissory estoppel can be asserted as a cause of action and an exception to the statute of frauds. *Owens v. Specialized Loan Servicing, L.L.C.*, 694 Fed. App'x 950, 955 (5th Cir. 2017). "The requisites of promissary estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 n.60 (5th Cir. 2016) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). The only difference between the cause of action and the exception to the statute of frauds is that for the former, "the promise does not have to be a promise to sign an existing document." *Owens*, 694 Fed. App'x at 956.

Another exception to the statute of frauds is partial performance. *Exxon Corp. V. Breezvale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). "Contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Id.* at 439. "Virtual fraud refers to the situation where the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and application of the statute of frauds would give the other party an unearned benefit." *Owens*, 694 Fed. App'x at 955–56. To constitute partial performance, the actions must unequivocally refer to the alleged agreement, such that the actions could have been done with no other design than to fulfill that agreement. *Breezevale*, 82 S.W.3d at 439–40.

---

[5]Nomad appears to argue that: (1) Jones Gill's liability for promissory estoppel arises from the PSA; or, (2) even though the proposed agreement was not executed, the statute of frauds does not bar recovery because Jones Gill partially performed under that agreement. *See* Dkt. 15 at 10 ("[Alexander] made a promise to Nomad that it would purchase the minerals described in the PSA."); *see id.* ("Jones Gill . . . partially performed the terms of the agreement among [Alexander] and Nomad for [Alexander] to place the escrow monies into escrow by [Alexander] causing the escrow funds . . . of $100,000.00 to be placed in Jones Gill's IOLTA account, and Jones Gill and . . . Jones accepted [it] into [that] account."); *see also* Dkt. 52 at 13.

Jones Gill argues that there is no evidence to support any of the elements of Nomad's promissory estoppel claim. Dkt. 32 at 9. Jones Gill also argues that it never made any promises to Nomad or Bay, had no communication with Bay (until Bay emailed Jones twenty days after the wire transfer), and that Bay did not agree that Jones Gill should serve as the escrow agent under the PSA. *Id.*; Dkt. 61 at 4; *see also* Dkt. 32-1 at 2–3 (Jones Aff.) ("On . . . July 7, 2016, . . . Mann confirmed that the escrow agreement had not been executed."); *id.* ("The first contact I had with . . . Bay . . . was an email message received from [him] on July 27, 2016."). And Jones Gill argues that it would be unreasonable for Bay to rely on the PSA (that did not appoint an escrow agent) and the proposed agreement. Dkt. 61 at 4.

In addition, Jones Gill argues that Nomad cannot enforce the proposed agreement via the partial performance exception to the statue of frauds. Dkt. 32 at 9–11. Jones Gill argues that exception is inapplicable because no partial performance occurred. *Id*. Specifically, Jones Gill argues it did not partially perform the terms of the proposed agreement by accepting the funds into its IOLTA account. *Id.* Instead, Jones Gill argues that "its only action was to reject the wire and return the money after confirming that no escrow agreement had been executed by the parties." *Id.* at 11. In support, Jones Gill cites to the Jones and Blake affidavits. *Id.* (citing Dkts. 32-1 at 2, 32-2 at 1 (Blake Aff.)). Jones Gill satisfies its burden to show an absence of material fact on the promissory estoppel claim and the alternative theory of partial performance.

Nomad does not present any evidence to raise a fact issue on any of the elements of promissory estoppel or partial performance. Dkt. 52 at 13. Instead, Nomad merely cites to the proposed escrow agreement. *Id.* Nomad argues that because escrow agreements are not subject to the statute of frauds, the fact "that the parties to the PSA and [t]he Jones Gill Parties did not execute the written escrow agreement is irrelevant." *Id.* (citing Dkt.15-2). Further, "Nomad *pleads* in the alternative to the extent that the Court finds that the written escrow agreement should have been

executed . . . for the escrow agreement to be endorsable, the doctrine of partial performance applies." *Id.* (emphasis added). For that reason, Nomad argues "a fact issue exists regarding Nomad's promissory estoppel claim." *Id.* at 13–14. Nomad cites no evidence to support that purported fact issue. *See id.* Nomad thus fails to satisfy its burden to raise a fact issue on promissory estoppel or partial performance. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("*We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*.") (emphasis in original). Accordingly, the court GRANTS the instant motion for summary judgment as to Nomad's claim for promissory estoppel as well as its request to enforce the proposed agreement because of partial performance. Therefore, the court DISMISSES those claims with PREJUDICE.

## IV. Conclusion

Jones Gill demonstrated the absence of a genuine issue of material fact on each of Nomad's claims. Nomad failed to designate specific facts showing a genuine issue for trial on any of those claims. Because no fact issue exists, Jones Gill is entitled to judgment as a matter of law on each of Nomad's claims against it. Accordingly, Jones Gill's motion for summary judgment (Dkt. 32) is GRANTED and all of Nomad's claims against Jones Gill are DISMISSED with PREJUDICE. The court will enter a final judgment consistent with this order.

Signed at Houston, Texas on May 9, 2018.

_____
Gray H. Miller
United States District Judge