UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALEXANDER O&G, L.L.C., § § *Plaintiff*, § § v. § § NOMAD LAND AND ENERGY § RESOURCES, L.L.C., § § *Defendant*. § | CIVIL ACTION H-16-2965 |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for summary judgment filed by plaintiff and counter-defendant Alexander O&G, L.L.C. ("Alexander"). Dkt. 33. Defendant and counter-plaintiff Nomad Land and Energy Resources L.L.C. ("Nomad") responded. Dkt. 53. Alexander replied. Dkt. 55. Nomad supplemented its response. Dkt. 59. Alexander supplemented its reply. Dkt. 62. On June 5, 2018, both parties presented oral arguments. Dkt. 68. Having considered the motion, response, reply, supplemental briefing, record evidence, the parties' oral arguments, and applicable law, the court is of the opinion that Alexander's motion should be GRANTED in PART and DENIED in PART.

### I. BACKGROUND

This dispute arises out of an attempted transaction between two oil and gas companies: Alexander, the buyer, and Nomad, the seller. Dkt. 15-1 at 2; Dkt. 33 at 1. On June 28, 2016, the parties signed a Purchase and Sale Agreement ("PSA") for mineral interests ("MI"). Dkt. 1-4 at 6.

**A.     The PSA**

The PSA set the purchase price at $15,138.600. Dkt. 15-1 at 2. Under the PSA, Nomad needed to give Alexander "all relevant title information which [Nomad] may possess" before July

2, 2016. *Id*. Alexander needed to object to title defects before August 1, 2016. *Id.* ("Any title objections made by [Alexander] shall be presented to [Nomad] prior to August 1, 2016."). If Alexander did not object, closing would occur on August 12, 2016. *Id.*

However, if Alexander objected, the PSA gave Alexander "the right to have the purchase price adjusted . . . for all acreage not 'cured' to [its] sole satisfaction prior to August 12, 2016." *Id.* Additionally, the PSA gave Nomad, "if necessary, 10 additional business days after . . . August 12, 2016 . . . to cure any defected acreage to [Alexander's] sole satisfaction." *Id.* If Nomad needed those extra days to cure, Alexander would "close on all acreage cured to [its] sole satisfaction at the end of said additional ten (10) days." *Id.*

But "if any title objections submitted [we]re not satisfied by [Nomad], at [Alexander's] sole satisfaction," the PSA gave Alexander "the option and . . . the right to remove the unsatisfied acreage from the sale and have the purchase price reduced . . . or accept the property with the defect, and proceed to closing." *Id.*

The parties agreed that Alexander "shall tender [Nomad], in an agreed escrow agent's account, an earnest money deposit of $100,000 . . . which deposit shall be non-refundable, except in the event that [Nomad] shall be unwilling or unable to perform his obligations . . . in which case the entirety of the . . . deposit . . . shall be refunded to [Alexander]." *Id.* But "[i]f the agreement close[d], as contemplated, the earnest money . . .[would] be applied toward the satisfaction of the payment of the total consideration due and payable." *Id*.

Finally, the parties agreed that the PSA "[wa]s contingent on [Alexander's] confirmation of title, verification of interest and verification of the information used by [Alexander] to derive the offer, to . . . [its] sole satisfaction." *Id.*

### B. The events

After signing the PSA, Alexander asked Jones Gill LLP, a law firm, to hold the earnest money for the PSA "*in the event* [that] the parties agreed to the terms of the proposed sale." Dkt. 64 at 2 (emphasis added). Jones Gill: (1) agreed to hold the money if "all parties executed and returned an escrow agreement"; and (2) drafted a proposed escrow agreement ("proposed agreement"). *Id.* Both Alexander and Nomad received copies of the proposed agreement. *Id.*

On June 29, 2016, Alexander wired $100,000 to Jones Gill's IOLTA account.[1] *Id.* at 3. Neither party returned a signed copy of the proposed agreement to Jones Gill. *Id.*

On July 7, 2016, Alexander contacted Jones Gill to: (1) inform the firm that the parties did not sign the proposed agreement; and (2) ask for its money back. *Id.* On July 8, 2016, Jones Gill wired the money back to Alexander. *Id.*

On July 27, 2016, Nomad emailed Jones Gill. *Id.* Nomad attached an unsigned copy of the proposed agreement to that email. *Id.* It also asked for the escrow balance. *Id.* Jones Gill declined. *Id.* at 4. And it alerted Nomad that it had returned the balance to Alexander. *Id.* at 4. On the same day, Alexander told Nomad that it had: (1) concluded that Nomad lacked title to the acreage in the PSA; and (2) notified Nomad that the PSA was terminated. Dkt. 33-2 at 3; Dkt. 56 at 1.

On August 23, 2016, Alexander sued Nomad to get a state court judgment declaring that the PSA had been terminated. Dkt. 1-4 at 6.[2] Nomad removed to this court. Dkt. 1. It also counter-

---

[1] *See also* What is IOLTA?, IOLTA, http://www.iolta.org/what-is-iolta ("Interest on Lawyers Trust Accounts (IOLTA) is a . . . way to increase access to justice for individuals and families living in poverty . . .[whereby] interest from lawyer trust accounts is pooled to provide civil legal aid to the poor and support improvements to the justice system.").

[2] Alexander seeks a declaration that: (1) Nomad breached the PSA by not performing; (2) Nomad repudiated it by refusing to perform; and (3) Nomad's breach was material. Dkt. 1-4 at 6. Alexander also asks for a declaration that its injuries were the natural, probable, and foreseeable consequences of Nomad's breach. *Id.*

sued Alexander for: (1) breach of contract; (2) money had and received; and, alternatively, (3) "promissory estoppel/unjust enrichment." Dkt. 15 at 7–9. And it added Jones Gill and Michael Jones as third-party defendants (collectively "Jones Gill"). *See id.*

On May 9, 2018, the court granted Jones Gill's motion for summary judgment on all of Nomad's claims against it (the "Jones Gill order"). Dkt. 64. The court found that: (1) Alexander wired $100,000 to Jones Gill's IOLTA account; (2) Jones Gill wired it back to Alexander; (3) the parties never agreed to an escrow agent; and (4) the parties never executed the proposed agreement. *Id.*

### C.     The hearing

At the hearing, the court asked the parties to explain how the Jones Gill order (Dkt. 64) impacted the remaining claims in the case. Dkt. 68 at 3–4.

When asked if there "was there a valid contract to be breached in the first place[,]" Alexander replied that "there was not a deal." *Id.* at 4, 6. And when asked if "this PSA is a binding contract on both parties[,]" Alexander responded: "[n]o, it needed to be supported by consideration. It was not." *Id.* at 12.

Alexander confirmed that Nomad "provide[d] . . . title information." *Id.* at 10; *see id.* ("They did."). Alexander also acknowledged that it needed to object to title defects. *Id.* at 8 (court: "there was a process by which any defects in the title or any deficiencies could be cured or addressed"); *id.* at 9 (Alexander: "Sure."); *id.* at 10 (Alexander: "It just says you have to object.").

Initially, Alexander did not admit that it failed to object to title defects.[3] *Id.* at 9 (court: "[b]ut

---

[3] Before the hearing, Alexander asserted that it "notif[ied] Nomad of its concerns and objections regarding title confirmation." Dkt. 33 at 4. The court reminds Alexander of its obligations under the Local Rules. *See, e.g.,* S.D. Tex. L.R., Appendix D ("[a] lawyer owes, to the judiciary, candor.").

4

as I understand it . . . that procedure wasn't followed[?]"); *id.* at 10 ("It just says you have to object."). Instead, it highlighted the lack of detail in the PSA. *Id.* at 10 ("It doesn't say how a defect is to be . . . delivered or to whom. The methodology is completely unstated."). However, it later conceded that "[t]he in-house counsel for [Alexander] . . . was not satisfied[,] [a]nd not being satisfied, he said no to this deal." *Id.* at 11.

### D. The instant motion

Alexander moves for summary judgment on its request for a declaratory judgment. Dkt. 33. Alexander also moves for summary judgment on Nomad's counterclaims for: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment.[4] *Id.* Nomad objected to some of Alexander's summary judgment evidence. Dkt. 53 at 8. The court will address the objections before analyzing the instant motion.

## II. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant

---

[4]The court notes that the instant motion does not seek summary judgment on Nomad's counterclaim for money had and received.

and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

### A. Objections

In support of its motion, Alexander offers the email it sent to Nomad to terminate the PSA. Dkt. 33-2 at 2. Nomad objects to it as inadmissible "on the basis of surprise and prejudice." Dkt. 53 at 8.

#### 1. *Surprise*

First, Nomad asserts that the email "was never received by Nomad and not produced in discovery." *Id.* Alexander argues that "[t]he email did not constitute a surprise to Nomad now or when it was written [because] . . . [Nomad] admits receiving a telephone call delivering the same message: that the . . . PSA . . . was terminated." Dkt. 55 at 1. When Nomad filed the instant motion, discovery had not yet closed. Dkt. 57. Accordingly, its "surprise" objection is without merit and it is OVERRULED.

#### 2. *Prejudice*

Next, the court construes Nomad's "prejudice" objection as made under Federal Rule of Evidence 403. Dkt. 53 at 8. Rule 403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Alexander's email has probative value in that it purports to terminate the PSA and explain its reasons for doing so. *See* Dkt. 33-2 at 2. Nomad has not explained what, if any, danger of unfair prejudice exists. *Compare* Dkt. 53 at 8, *with* Fed. R. Evid. 403. Accordingly, this objection is OVERRULED.

### B. Declaratory judgment

Alexander moves for summary judgment on its request for a declaratory judgment. Dkt. 33. Initially, Alexander argued that: "(1) the [PSA] was a valid contract; (2) [Alexander] performed according to the terms of the contract; and (3) Nomad breached the contract because Nomad could not provide proof of title to the acreage in the PSA to the 'sole satisfaction of [Alexander]' as required by the PSA." Dkt. 62 at 5. However, at the summary judgment hearing, Alexander expressly conceded that the PSA did not constitute a valid contract. *See supra* Section I.C. As a result, Alexander cannot show that it is entitled to declaratory relief and has waived that request. See *Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003) ("[a] party's concession of an issue means the issue is waived."). Therefore, the instant motion is DENIED with respect to Alexander's request for declaratory relief, and that request is DISMISSED with PREJUDICE.

### C. Nomad's counterclaims

Alexander also moves for summary judgment on Nomad's counterclaims for: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. Dkt. 33; *see also* Dkt. 15 at 7–9 (Nomad's counterclaims).

#### *1. Breach of contract*

Alexander advances two grounds for granting summary judgment on Nomad's breach of contract claim. Dkt. 33 at 4. First, Alexander argues that because it "performed according to the terms of the [PSA,]" Nomad's claim fails. *Id.* But Alexander negates its own argument by conceding that it did not perform under the PSA. *See supra* Section I.C. (acknowledging that it needed to object but failed to do so). Accordingly, its first ground fails. *See Smith*, 328 F.3d at 770.

Next, Alexander argues that Nomad's claim fails because the latter "did not sustain any damages." Dkt. 33 at 4. However, because Alexander did not meet its initial burden to show an

absence of a triable fact issue, this ground also fails. *See Celotex*, 477 U.S. at 323; *see also* Dkt. 15-1 at 2. For these reasons, the instant motion is DENIED and Nomad's claim for breach of contract survives.

2. *Promissory estoppel*

Promissory estoppel requires: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 n.60 (5th Cir. 2016). "The function of the doctrine of promissory estoppel is . . . defensive in that it estops a promisor from denying the enforceability of a the promise." *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972). It "does not create a contract where none existed before" and it "does not operate to create liability where it does not otherwise exist." *Allied Vista Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

Alexander argues that Nomad cannot recover for promissory estoppel on the basis of a conditional promise. Dkt. 33 at 5 (citing Dkt.15-1 at 2). Nomad alleges Alexander made two different promises. Dkt. 15 at 10. According to Nomad, Alexander is liable for (1) $100,000 for the unexecuted escrow agreement; and (2) $2,329,000 for the PSA. *Id.*

a. *The proposed agreement*

Nomad seeks to recover $100,000 for the proposed agreement.[5] But the court determined that the parties did not: (1) agree upon an escrow agent; nor (2) sign the proposed agreement. Dkt. 64 at 3, 9, 11, 13–15; *see also* Dkt. 68 at 4. As a result, Nomad cannot, as a matter of law, show that

---

[5]According to Nomad, Alexander "partially performed per the terms of the agreement among [sic] [Alexander] and Nomad for [Alexander] to place the escrow monies into escrow by [Alexander] causing the escrow funds in the amount of $100,000 to be placed into Jones Gill's IOLTA account." Dkt. 15 at 10.

Alexander made a promise about the $100,000. *Cf. Int'l Energy*, 818 F.3d at 209 n.60. Thus, Alexander is entitled to judgment as a matter of law, the instant motion is GRANTED, and Nomad's claim for promissory estoppel as to the $100,000 is DISMISSED with PREJUDICE.

  b. *The PSA*

Nomad also seeks to recover $2,329,000 under a promissory estoppel theory. Dkt. 15 at 10. Specifically, Nomad alleged that: (1) Alexander "promise[d] . . . Nomad that it would purchase the minerals described in the PSA; (2) it "reasonably and substantially relied on the promise to its detriment"; (3) its "reliance was foreseeable by [Alexander]"; and that "injustice can be avoided only by enforcing [Alexander's] promise." Dkt. 15 at 10. Because Alexander failed to meet its initial burden, the court DENIES the instant motion as to the PSA portion of Nomad's promissory estoppel claim.[6]

  3. *Unjust enrichment*

"Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received. Unjust enrichment allows recovery when one person has obtained a benefit by fraud, duress, or the taking of an undue advantage." *Perales v. Bank of America, N.A.*, Civil Action No. H-14-1791, 2014 WL 3907793,*3 (S.D. Tex. Aug. 11, 2014) (Rosenthal, J.) (quotations omitted).

---

[6]The court construes Alexander's minimal briefing as an attempt to argue that Nomad's inability to meet the condition of Alexander's promise bars Nomad from recovering for promissory estoppel under the PSA. *See* Dkt. 55 at 5 ("the PSA was the only promise . . . and [it] was conditional upon [its] sole satisfaction, which Nomad was unable to achieve."); *see also* Dkt. 33 at 5 (citing Dkt. 15-1 at 2) ("This agreement is contingent upon [Alexander's] confirmation of title, verification of interest and verification of the information used by [Alexander] to derive their offer to . . . [its] sole satisfaction."). Characterizing a promise as conditional—even if true—fails as a basis to grant the instant motion as to this claim.

Nomad alleges that Alexander is liable for unjust enrichment. Dkt 15 at 11. Nomad asserts that Alexander was unjustly enriched when it directed Jones Gill to refund its money. *Id.* Instead, Jones Gill should have sent the $100,000 to Nomad "per the terms of the PSA." *Id.*

Alexander advances one argument to assert that Nomad could not recover for unjust enrichment. Dkt. 33 at 5. It argues that the existence of a valid contract (the PSA) bars recovery for unjust enrichment. *Id.* Yet, Alexander conceded that no contract exists. *See supra* Section I.C.; *see also supra* Section III.C.2. Thus, Alexander negates its sole ground for summary judgment on unjust enrichment. *Compare id.*, *with* Dkt. 33 at 5. Accordingly, the court DENIES the instant motion and Nomad's unjust enrichment claim survives summary judgment.

## IV. CONCLUSION

Because Alexander waived its request for declaratory relief, that request is DENIED, and it is DISMISSED with PREJUDICE. In addition, no triable issue of fact exists on Nomad's counterclaim for promissory estoppel on the proposed agreement. Accordingly, Alexander's motion for summary judgment is GRANTED in part and that counterclaim is DISMISSED with PREJUDICE. However, because Alexander did not meet its initial burden on Nomad's counterclaims ((1) breach of contract; (2) promissory estoppel as it relates to the PSA; and (3) unjust enrichment), the instant motion is DENIED in PART.[7]

Signed at Houston, Texas on July 23, 2018.

_____
Gray H. Miller
United States District Judge

---

[7] *See* Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Hous. L. Rev. 1379, 1543 (2010) ("Effective advocacy in summary judgment practice depends on strategic timing decisions, development and use of evidence, written persuasion, and an understanding of the particular judge and his or her procedures. These factors, combined with *technical correctness*, ultimately determine success in summary judgment practice.") (emphasis added).